Slip Op. 12- 8 9

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **OTR WHEEL ENGINEERING, INC.,** | |
| Plaintiff, | |
| v. | **Before: Jane A. Restani, Judge** |
| **UNITED STATES,** | Court No. 11-00166 |
| Defendant, | |
| **BRIDGESTONE AMERICAS, INC., and BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC,** | |
| Intervenor Defendants. | |

## OPINION AND ORDER

[Commerce scope inquiry determination remanded.]

Dated: June 27, 2012

Arthur K. Purcell, Sandler, Travis & Rosenberg, PA, of New York, NY, argued for plaintiff. With him on the brief were Donna L. Bade, Mark R. Ludwikowski, and Mark J. Segrist.

Alexander V. Sverdlov, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant. With him on brief were Stuart F. Delery, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Franklin E. White, Jr., Assistant Director. Of counsel on the brief was Matthew D. Walden, Attorney, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, of Washington, DC.

Christopher T. Cloutier, Joseph W. Dorn, Prentiss Lee Smith, and J. Michael Taylor, King & Spalding, LLP, of Washington, DC for intervenor defendants.

Restani, Judge: This matter is before the court on plaintiff OTR Wheel

Engineering, Inc.'s ("OTR Wheel" or "Plaintiff") motion for judgment upon the agency record

pursuant to USCIT Rule 56.2.  Plaintiff, an importer of certain pneumatic off-the-road ("OTR")

tires from the People's Republic of China ("PRC"), challenges the U.S. Department of

Commerce's ("Commerce" or "Secretary") final scope ruling regarding an antidumping ("AD")

duty order and countervailing duty order covering certain pneumatic OTR tires from the PRC.

Antidumping Duty and Countervailing Duty Orders ("CVD") on Certain New Pneumatic

Off-The-Road Tires from the People's Republic of China: Final Scope Ruling – OTR Wheel

Engineering, Inc., <u>available at</u> Pl.'s Rule 56.2(c)(3) App. of Admin. R. ("Pl.'s App."), Ex. F

(Apr. 26, 2011) ("Final Scope Ruling").  For the reasons stated below, the court remands

Commerce's findings for further proceedings consistent with this opinion.

## BACKGROUND

In September 2008, Commerce placed antidumping and countervailing duty

orders on certain new pneumatic OTR tires from the PRC.[1]  <u>Certain New Pneumatic</u>

<u>Off-the-Road Tires From the People's Republic of China: Countervailing Duty Order</u>, 73 Fed.

Reg. 51,627, 51,627 (Dep't Commerce Sept. 4, 2008) ("<u>CVD Order</u>"); <u>Certain New Pneumatic</u>

<u>Off-the-Road Tires From the People's Republic of China: Antidumping Duty Order: Notice of</u>

<u>Amended Final Affirmative Determination of Sales at Less Than Fair Value and Antidumping</u>

---

[1] "Generally, whenever domestic producers of a particular product believe that imports of certain competing goods are being sold in the United States at less than fair market value (i.e., being 'dumped'), they may petition Commerce to impose antidumping duties on the imports of the goods." <u>King Supply Co. v. United States</u>, 674 F.3d 1343, 1345 (Fed. Cir. 2012).  After investigations by Commerce and the U.S. International Trade Commission ("ITC"), Commerce may issue "an AD order imposing antidumping duties on the appropriate imported merchandise." <u>Id.</u> (citing 19 U.S.C. § 1673d(c)(2)).  "After an AD order is issued, Commerce is often called upon to issue 'scope rulings' to clarify the scope of the AD order and determine whether particular products are included within its scope."  <u>Id.</u>

Duty Order, 73 Fed. Reg. 51,624, 51,624 (Dep't Commerce Sept. 4, 2008) ("AD Order")

(collectively "the orders").  The scope of these orders[2] was stated as follows:

>The products covered by the order are new pneumatic tires designed for off-the-road
>(OTR) and off-highway use, subject to exceptions identified below.  Certain OTR tires
>are generally designed, manufactured and offered for sale for use on off-road or
>off-highway surfaces, including but not limited to, agricultural fields, forests,
>construction sites, factory and warehouse interiors, airport tarmacs, ports and harbors,
>mines, quarries, gravel yards, and steel mills.  The vehicles and equipment for which
>certain OTR tires are designed for use include, but are not limited to: (1) Agricultural and
>forestry vehicles and equipment, including agricultural tractors, combine harvesters,
>agricultural high clearance sprayers, industrial tractors, log-skidders, agricultural
>implements, highway-towed implements, agricultural logging, and agricultural,
>industrial, skid-steers/mini-loaders; (2) construction vehicles and equipment, including
>earthmover articulated dump products, rigid frame haul trucks, front end loaders, dozers,
>lift trucks, straddle carriers, graders, mobile cranes, compactors; and (3) industrial
>vehicles and equipment, including smooth floor, industrial, mining, counterbalanced lift
>trucks, industrial and mining vehicles other than smooth floor, skid-steers/mini-loaders,
>and smooth floor off-the-road counterbalanced lift trucks.  The foregoing list of vehicles
>and equipment generally have in common that they are used for hauling, towing, lifting,
>and/or loading a wide variety of equipment and materials in agricultural, construction and
>industrial settings.  Such vehicles and equipment, and the descriptions contained in the
>footnotes are illustrative of the types of vehicles and equipment that use certain OTR
>tires, but are not necessarily all-inclusive.  While the physical characteristics of certain
>OTR tires will vary depending on the specific applications and conditions for which the
>tires are designed (e.g., tread pattern and depth), all of the tires within the scope have in
>common that they are designed for off-road and off-highway use.  Except as discussed
>below, OTR tires included in the scope of the order range in size (rim diameter) generally
>but not exclusively from 8 inches to 54 inches.  The tires may be either tube-type or
>tubeless, radial or non-radial, and intended for sale either to original equipment
>manufacturers or the replacement market.  The subject merchandise is currently
>classifiable under Harmonized Tariff Schedule of the United States ("HTSUS")
>subheadings: 4011.20.10.25, 4011.20.10.35, 4011.20.50.30, 4011.20.50.50,
>4011.61.00.00, 4011.62.00.00, 4011.63.00.00, 4011.69.00.00, 4011.92.00.00,
>4011.93.40.00, 4011.93.80.00, 4011.94.40.00, and 4011.94.80.00. While HTSUS
>subheadings are provided for convenience and customs purposes, our written description
>of the scope is dispositive.

---

[2] Although the AD Order and CVD Order differ in some respects, the two orders are
identical for the purpose of defining the scope of the orders.

AD Order, 73 Fed. Reg. at 51,624–25 (footnotes with definitions omitted).  The orders also listed

types of tires which were excluded from the scope:

> [P]neumatic tires that are not new, including recycled or retreaded tires and used tires;
> non-pneumatic tires, including solid rubber tires; tires of a kind designed for use on
> aircraft, all-terrain vehicles, and vehicles for turf, lawn and garden, golf and trailer
> applications.  Also excluded from the scope are radial and bias tires of a kind designed
> for use in mining and construction vehicles and equipment that have a rim diameter equal
> to or exceeding 39 inches.  Such tires may be distinguished from other tires of similar
> size by the number of plies that the construction and mining tires contain (minimum of
> 16) and the weight of such tires (minimum 1500 pounds).

Id. at 51,625.  In February 2011, OTR Wheel filed a scope ruling request, asking that Commerce

find Trac Master and Traction Master tires imported by OTR Wheel fall within the scope

exclusion for "tires of a kind used on . . . vehicles for turf, lawn and garden . . . applications."

Scope Ruling Request: OTR Wheel Engineering, Inc. – Lawn & Garden Tires, available at Pl.'s

App., Ex. A, at 4 (Feb. 11, 2011) (quoting AD Order, 73 Fed. Reg. at 51,625).  OTR Wheel

argued that the plain language of the scope was dispositive in excluding OTR Wheel's Trac

Master and Traction Master tires.  Id.  Bridgestone Americas, Inc. and Bridgestone Americas

Tire Operations, LLC (collectively "Bridgestone") filed comments opposing OTR Wheel's

exclusion request.

            In April 2011, Commerce released its Final Scope Ruling, finding that the tires

were not excluded from the orders.  Final Scope Ruling at 8.  Pursuant to 19 C.F.R.

§ 351.225(k)(1), Commerce stated that it found the description of the merchandise contained in

the petition, the initial investigation, and the determinations of the Secretary of Commerce and

the ITC to be dispositive.  Id. at 6.  By drafting the scope orders during the original investigation

to replace the word "use" with the phrase "designed for use," Commerce made clear that end-use

was not determinative.  Id.  Commerce then looked at data from the Tire and Rim Association

("TRA") and the ITC's injury determinations to determine the general purpose of the tires.

Commerce found that tires with R-1 and R-4 type treads were used for farming, light industrial

service, and highway mowing.  Id. at 7.  Because the tires in question had R-1 and R-4 type

treads, Commerce determined that such tires were not excluded from the scope of the order.  Id.

at 7–8.  Commerce found it unnecessary to conduct a formal proceeding to consider the

additional factors contained in 19 C.F.R. § 351.225(k)(2).  Id. at 5.[3]  For its part, OTR Wheel

does not argue that its tires fall outside the general scope of the orders, merely that they are

within an exclusion for turf, lawn, and garden applications.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2).  Commerce's final

scope determination is upheld unless it is found "to be unsupported by substantial evidence on

the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

In determining if a product is within the scope of an order, "'the scope of a final

order may be clarified, [but] it can not be changed in a way contrary to its terms.'"  Duferco

Steel, Inc. v. United States, 296 F.3d 1087, 1097 (Fed. Cir. 2002) (quoting Smith Corona Corp.

v. United States, 915 F.2d 683, 686 (Fed. Cir. 1990)).  "[B]ecause the descriptions of subject

merchandise contained in [Commerce's] determinations must be written in general terms," it is

---

[3] Although Bridgestone participated in the proceedings before Commerce, Bridgestone has chosen not to file briefs, appear at oral argument, or otherwise participate in the proceedings before this court.

often difficult to determine "whether a particular product is included within the scope of an

antidumping or countervailing duty order." 19 C.F.R. § 351.225(a); see also Duferco Steel, 296

F.3d at 1096.

   OTR Wheel argues that if the exclusionary language in the orders does not clearly

exclude its merchandise, it is at least ambiguous as to whether it excludes OTR Wheel's Trac

Master and Traction Master tires from the scope.[4]  It argues further that Commerce improperly

determined that the tires were not excluded based on industry descriptions of tires, which

Commerce found dispositive under 19 C.F.R. § 351.225(k)(1).  Pl.'s Rule 56.2 Mot. for J. on the

Agency R. ("Pl.'s Mot.") 11.  Specifically, OTR Wheel argues that Commerce erred because it

gave improper weight to tread type, failed to consider tire size, and took statements made in the

ITC injury determinations out of context.  Id. at 11–14.

   Pursuant to 19 C.F.R. § 351.225(d),[5] "in considering whether a particular product

is included within the scope of an order or a suspended investigation, [Commerce] will take into

account . . . [t]he descriptions of the merchandise contained in the petition, the initial

---

  [4] The Government contends that although the plain scope language itself is not
dispositive, when understood in the context of the controlling documents it becomes clear that
the merchandise is not excluded.

  [5] Section 351.225(d) states that:

  If the Secretary can determine, based solely upon the application and the descriptions of
  the merchandise referred to in paragraph (k)(1) of this section, whether a product is
  included within the scope of an order or a suspended investigation, the Secretary will
  issue a final ruling as to whether the product is included within the order or suspended
  investigation.

19 C.F.R. § 351.225(d).

investigation, and the determinations of [Commerce] (including prior scope determinations) and

the [ITC]." 19 C.F.R. § 351.225(k)(1).  Only "[w]hen the above criteria are not dispositive . . .

will [Commerce] further consider: (i) The physical characteristics of the product; (ii) The

expectations of the ultimate purchasers; (iii) The ultimate use of the product; (iv) The channels

of trade in which the product is sold; and (v) The manner in which the product is advertised and

displayed."  19 C.F.R. § 351.225(k)(2).

   In its Final Scope Ruling, Commerce determined that the record evidence

demonstrated that OTR Wheel's Trac Master and Traction Master tires were not specifically

designed for turf, lawn, and garden applications because of the tread types of the tires.  Final

Scope Ruling at 7.  All OTR Wheel tires at issue have R-1 and R-4 type treads.[6]  Commerce

reviewed the "TRA's 2011 Yearbook regarding agricultural and industrial tires, and lawn and

garden tires, and found no instance where the TRA designated R-1 and R-4 [tread type] tires for

service for lawn and garden applications."  Id.  After noting that the orders covered tires ranging

from eight to fifty-four inches in rim diameter and that the tires at issue were from eight to

twelve inches in rim diameter, Commerce turned to the ITC's Preliminary Injury Determination

Pricing Data, which referenced Hi-Traction Lug R-1 tread type tires stating:

> R-1 tires are identified as:
>  . . . a typical farm tractor rear wheel having a regular depth 'lug-type' R-1 tread
> used for general farming, as defined by the Tire Rim Association 'TRA.'  A farm
> tractor tire of this nature would typically have a herringbone (criss-cross) tread

---

[6] OTR Wheel's tires were classified under HTSUS 4011.61.0000: "Other, having a 'herring-bone' or similar tread: Of a kind used on agricultural or forestry vehicles and machines."  This subheading is mentioned in the orders.  OTR Wheel proposed HTSUS 4011.69.00: "New pneumatic tires, of rubber: Other, having a 'herring-bone' or similar tread: Other."  This subheading is also mentioned in the orders.

> design of medium depth.  The tread types for rear wheels of agricultural tractors
> are variable by the industry as 'lug' or 'bar tread.'  The 'bar tread' is a lug tread
> usually running at an approximate 23 degree angle around the tire [sic] directional
> circumference which helps power the equipment through the soil.

Final Scope Ruling at 7 (quoting Certain Off-the-Road Tires From China, USITC Pub. No. 3943,

Inv. Nos. 701-TA-448, 731-TA-117 (Aug. 2007) at V-3, available at

http://www.usitc.gov/publications/701_731/pub3943.pdf (last visited June 19, 2012)

("Preliminary Injury Determination")).[7]  As to ITC's statements about Industrial Tractor Lug R-

4 tread type tires in ITC's pricing data Commerce noted:

> With respect to R-4 tire types, the ITC stated:
>> An R-4 herringbone-type lug tread has an intermediate tread depth.  Tires of this
>> type are commonly found on the rear wheel of 'backhoe loaders' which, for
>> example, may be used in a stationary, braced position to dig holes and trenches
>> with the backhoe; for example, to tie into an underground water main or power
>> supply in light construction areas.  The front blade attachment may be used to
>> scoop up and lift dirt.  TRA recommends this type tire for light industrial service
>> and highway mowing.

Final Scope Ruling at 7 (quoting Preliminary Injury Determination at V-3).  OTR Wheel states

that "R-4 tires are traditionally, but not universally, designed for use on tractors, light industrial

equipment or on vehicles with highway mowing capabilities," Pl.'s Mot. 3–4, 17, but Commerce

discounted OTR Wheel's evidence that its products are advertised for use on lawn and garden

---

[7] Commerce in the Final Scope Ruling claims that the Preliminary Injury Determination
was "unchanged in final determination."  Final Scope Ruling at 7 n.38.  This is incorrect.
Although the Final Injury Determination references some of the same types of tires, the Final
Injury Determination does not contain the two footnotes explaining the use of the R-1 and R-4
tread type tires referenced there, upon which Commerce relied in its Final Scope Ruling.  See
Certain Off-The-Road Tires From China, USITC Pub. No. 4031, Inv. Nos. 701-TA-448, 731-
TA-1117 (Aug. 2008) at V-4, available at
http://www.usitc.gov/publications/701_731/pub4031.pdf (last visited June 19, 2012) ("Final
Injury Determination").

vehicles as relevant to end-use, not design.[8]  The petition was not included in the record before

Commerce or the record before this court.  Commerce did not provide an analysis of descriptions

of merchandise in the petition[9] or of other statements in the determinations of the Secretary or

the ITC.[10]

    "If the determination can be made based on section (k)(1), a scope ruling will

issue without a full evaluation of the criteria in (k)(2)."  Tak Fat Trading Co. v. United States,

396 F.3d 1378, 1382 (Fed. Cir. 2005).  For a (k)(1) determination to be dispositive, the

permissible sources examined by Commerce "must be controlling of the scope inquiry in the

sense that they definitively answer the scope question."  Sango Int'l L.P. v. United States, 484

F.3d 1371, 1379 (Fed. Cir. 2007) (internal quotation marks omitted).  "[A]ntidumping and

countervailing duty orders are specific to a particular kind or class of merchandise and, therefore,

unless otherwise specified, they must necessarily be interpreted in the context of the industry in

which the merchandise at issue is manufactured, bought and sold."  Arcelormittal Stainless Belg.

---

 [8] As the Government concedes, evidence of end-use is relevant to the general inquiry into what the product is designed for.  Ultimate use is to be considered under 19 C.F.R. § 351.225(k)(2).  End-use, however, is not dispositive unless scope is clearly limited by end-use. King Supply Co., 674 F.3d at 1348–49 (finding that when Commerce intends to impose an end-use exception it uses the terms "only" or "solely").

 [9] Additionally, no party contends that the petition contains information defining the exclusion clause in the order.  The court notes that 19 C.F.R. § 351.225(k)(1) requires Commerce to consider the petition.  Here, Commerce made no reference to the petition in its Final Scope Ruling, except for a formulaic mention of it.

 [10] The court also notes that in a limited inquiry under 19 C.F.R. § 351.225(k)(1) Commerce may not rely on Bridgestone's ex-petition comments regarding usage of R-1 and R-4 tread type tires.  See Def.'s Resp. to Pl.'s Rule 56.2 Mot. for J. Upon the Admin. R. and App. ("Def.'s Resp.") at 13.  In such a limited inquiry Commerce may decline to review newly submitted advertising materials, such as that of OTR Wheel.

N.V. v. United States, Slip Op. 11-82, 2011 WL 2713872, at *1 (CIT July 12, 2011) (finding that

"4.75 mm" is not one definite measurement because, in the context of the industry, purchasers

routinely accept variance in measurement).[11]  Because the exclusionary provision of the orders

does not unambiguously define "tires of a kind designed for use on . . . vehicles for turf, lawn

and garden . . . applications," AD Order, 73 Fed. Reg. at 51,625, Commerce relied on external

documents to try to determine if OTR Wheel products were excluded, but it did not limit itself to

the documents listed in 19 C.F.R. § 351.225(k)(1).  Neither did Commerce formally reach the 19

C.F.R. § 351.225(k)(2) factors.  In any case, the documents Commerce cited do not provide

substantial evidence for its scope determination.

      Both parties rely on the TRA 2011 Yearbook, yet it is unclear what it says about

industry understanding of the tires at issue.  OTR Wheel identifies evidence in the TRA 2011

Yearbook as an indication that "Trac Master and Traction Master tires are tires of a kind

designed for use on vehicles with turf, lawn and garden applications."  Pl.'s Mot. at 11 (internal

quotation marks omitted).  OTR Wheel alleges that its tires fall within the size of "Lawn and

Garden" tires in TRA 2011 Yearbook Section 6 ("Industrial Section") and are smaller than some

of the tires in TRA 2011 Yearbook Section 5 ("Agricultural Section").  Id. at 11 (citing Pl.'s

App. Ex. E at 6-24–6-31).  OTR Wheel contends that Commerce "inexplicably disregarded or

ignored" this evidence, and "accord[ed] disproportionate weight to the fact that Plaintiff's tires

happen to share a common 'R-1'and 'R-4' tread type with some of the tires covered by the"

---

[11] The Government relies on this case to expand its ability to look beyond (k)(1) criteria
or to avoid formal proceedings, but it is one thing to look at accepted industry understandings of
particular terms used in an order.  It is another matter to look at industry publications to
determine if particular products fit within undefined terms.

orders.  Pl.'s Mot. at 11, 13, 16–18.  The Industrial Section of the TRA 2011 Yearbook contains

a sub-section defining "Tires for Utility Vehicles and Lawn and Garden Tractors."  All of OTR

Wheel's tires fall within the tire size designations of this section,[12] but the sub-section does not

specify whether tires under this section contain either an R-1 or R-4 type tread.  Pl.'s App. Ex. E,

at 6-24–27.

        The Agricultural Section of the TRA 2011 Yearbook does not contain a sub-

section on lawn and garden tires and, unlike the Industrial Section, which does not address tire

tread type, lists R-1 or R-4 tread type tires as for service on "agricultural tractor[s]," combine

harvester[s]," "agricultural high clearance sprayer[s]," and "industrial tractor[s]."  Pl.'s App. Ex.

E, at 5-01.  Although the TRA 2011 Yearbook might support a conclusion that some tires

containing R-1 and R-4 tread types have been designed for use on other than turf, lawn and

garden vehicles, the Yearbook also provides some evidence that tires of the size (and possibly

the tread type) created by OTR Wheel are designed for use on turf, lawn, and garden vehicles.

Taken as a whole and without further context, the TRA 2011 Yearbook does not provide

substantial support for a scope decision as to OTR Wheel's tires.

        OTR Wheel contends that "Commerce's reference to the ITC Final [Injury

Determination] is misleading because that particular ITC reference to tread types was taken

---

[12] OTR Wheel alleges that all its tires fall within the tire size designations of this section.
OTR Wheel's tires range from 16 inches (nominal overall diameter) by 7.50 inches (nominal
section width) to 26 inches by 12.00 inches.  Pl.'s Mot. at 11.  Tires under the "Utility Vehicles
and Lawn and Garden Tractors" sub-section range from 11 inches by 4.00 inches to 27 inches by
12 inches.  Pl.'s App. Ex. E, at 6-24–31.  Thus, OTR Wheel's tires all fall within the tire size
designations of the "Tires for Utility Vehicles and Lawn and Garden Tractors" section.

entirely out of context."[13]  Pl.'s Mot. at 14.  OTR Wheel asserts that the ITC's discussion focused on the pricing of in-scope product categories to the exclusion of product categories excluded from the scope.  Pl.'s Mot. at 14–15.  Commerce counters that the ITC references are merely descriptions of R-1 and R-4 tread type tires generally and that such definitions were not limited to certain R-1 and R-4 tread type tires included within the scope of the orders.  Def.'s Resp. at 17.

   Preliminarily, Commerce has not explained if the absence of the explanatory footnotes regarding R-1 and R-4 tread type tires from the Final Injury Determination has any significance.  Next, the Preliminary Injury Determination focuses on "Hi-Traction Lug R-1" and "Industrial Tractor Lug R-4" tires of certain sizes.  Preliminary Injury Determination at V-3.  The referenced "Industrial Tractor Lug R-4" size tire does not seem consistent with the dimensions of OTR Wheel's tires.  That is, the descriptions of these tires seem applicable to tires of specific usage, size, and tread type, rather than generally fitting to all R-1 and R-4 tread type tires.  Thus, the materials cited from ITC's injury investigation fail to provide useful evidence that all R-1 and R-4 tread type tires of a size imported by OTR Wheel are not excluded from the scope of the orders by the turf, lawn, and garden exception.[14]

---

[13] The ITC Final Injury Determination at V-4 lists some specific R-1 and R-4 tires, without definition.  As noted by OTR Wheel, these lists are in the pricing section of the Final Injury Determination, as they were in the Preliminary.  It is unclear what the ITC determinations add to the inquiry.

[14] Commerce argues that OTR Wheel "has not provided information to substantiate that claim [that OTR Wheel's Trac Master and Traction Master tires are specifically designed for use on vehicles with turf, lawn, and garden applications] (e.g., designs, schematics, internal memoranda, etc.)."  Final Scope Ruling at 8; see Def.'s Resp. at 14.  Such documents are

(continued...)

It is not enough that OTR Wheel's tires are agricultural or industrial tires generally within the scope of the order: OTR Wheel's tires must not be designed for use on turf, lawn, and garden vehicles in order to be included.  Although evidence cited by Commerce may indicate that some tires containing R-1 and R-4 tread types are designed for general agricultural and industrial use, Commerce's evidence does not indicate that other R-1 and R-4 tread type tires are not designed more specifically for use on turf, lawn, and garden vehicles.  Commerce's determination lacks substantial evidence that all tires with R-1 and R-4 tread types are included within the scope of the order.  The sources used by Commerce under its purported (k)(1) analysis are not "'controlling' of the scope inquiry in the sense that they definitively answer the scope question."  Sango Int'l, 484 F.3d at 1379.  The industry standards and ITC injury investigation materials relied upon by Commerce do not provide substantial support for determining whether tires of this particular size and tread type are excluded as turf, lawn, or garden tires.[15]  It seems quite unlikely that Commerce can confine itself to a limited § 351.225(k)(1) analysis here and reach a supported conclusion for the question of whether Plaintiff's products are designed for use in vehicles for turf, lawn, or garden applications.  What are turf, lawn, and garden applications? How does the industry view tires that are relatively small, but have somewhat aggressive treads?

---

[14](...continued)

typically evidence of the physical characteristics of the product, which are considered by Commerce as part of its formal 19 C.F.R. § 351.225(k)(2) analysis.  Normally, Commerce cannot consider these types of materials under a (k)(1) analysis, no matter who submits them. The issue here is whether a full inquiry should be undertaken.

[15] As the documents Commerce relied on do not clarify scope, we need not analyze all the documents that Commerce may consider at the (k)(1) stage in order to determine if the materials Commerce did consider were somehow incorporated into permitted documents.

These seem to be the types of questions that require a more reaching (k)(2) analysis.  Thus,

unless there is some dispositive feature of the petition and prior determinations that were

overlooked by Commerce, it shall proceed with a full inquiry.[16]

### CONCLUSION

Although OTR Wheel has asked this court to "remand this matter to Commerce

with instructions to exclude Plaintiff's 'Trac Master' and 'Traction Master' tires from the scope

of the subject <u>Tires Orders</u>," Pl.'s Mot. 24, Commerce has not yet properly completed its

analysis under 19 C.F.R. § 351.225(k).  The court hereby remands the matter to Commerce for

further evaluation pursuant to the procedures set forth in 19 C.F.R. § 351.225(k).


                                                             /s/ Jane A. Restani
                                                          Jane A. Restani
                                                                Judge

Dated: This 27th day of June, 2012.
          New York, New York.

---

[16] The Government contends that OTR Wheel has not exhausted its administrative
remedies as to § 351.225(k)(2) because it initially contended that either the plain scope language
or the § 351.225(k)(1) materials were dispositive of the issue in its favor.  If Commerce's
conclusion, which is properly before this court, is not supported by substantial evidence, the
Government may not prevail.  That OTR Wheel properly challenged Commerce's
§ 351.225(k)(1) analysis is sufficient.  If Commerce cannot make a proper (k)(1) decision, it
must proceed with a (k)(2) analysis and permit the parties to submit the full range of evidence.
What it may not do is reject (k)(2) evidence from one party and accept it from another.