Slip Op. 13-39

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| OTR WHEEL ENGINEERING, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> BRIDGESTONE AMERICAS, INC. and BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, <br><br> Intervenor Defendants. | Before: Jane A. Restani, Judge <br><br> Court No. 11-00166 |

[Commerce's Remand Results regarding the scope of the AD/CVD orders are sustained.]

## OPINION

Dated: March 22, 2013

Arthur K. Purcell, Donna L. Bade, Mark R. Ludwikowski, and Mark J. Segrist, Sandler, Travis & Rosenberg, PA, of New York, NY, for Plaintiff.

Alexander V. Sverdlov, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant. With him on the brief were Stuart F. Delery, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Franklin E. White, Jr., Assistant Director. Of counsel on the brief were Daniel J. Calhoun and Matthew D. Walden, Attorneys, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, of Washington, DC.

Christopher T. Cloutier, Joseph W. Dorn, Prentiss L. Smith, and J. Michael Taylor, King & Spalding, LLP, for Intervenor Defendants.

Restani, Judge: Previously, this matter was before the court on Plaintiff OTR Wheel Engineering, Inc.'s ("Plaintiff") motion for judgment on the agency record pursuant to

USCIT Rule 56.2.  See OTR Wheel Eng'g, Inc. v. United States, 853 F. Supp. 2d 1281, 1283 (CIT 2012).  Plaintiff, an importer of pneumatic off-the-road ("OTR") tires from the People's Republic of China ("PRC"), challenged the U.S. Department of Commerce's ("Commerce") final scope ruling regarding an antidumping duty ("AD") order[1] and a countervailing duty ("CVD") order[2] (collectively the "Tire Orders") covering certain pneumatic OTR tires from the PRC.  See Antidumping Duty and Countervailing Duty Orders on Certain New Pneumatic Off-The-Road Tires from the People's Republic of China: Final Scope Ruling  OTR Wheel Engineering, Inc., (Apr. 26, 2011), Pl.'s Rule 56.2(C)(3) App. of Admin. R. ("Pl.'s App."), Ex. F ("Final Scope Ruling").

The court ruled that Commerce lacked substantial evidence for its finding in the Final Scope Ruling that Plaintiff's tires did not fall within a scope exclusion to the Tire Orders for tires designed for turf, lawn, and garden application.  OTR Wheel, 853 F. Supp. 2d at 1290.  The court further concluded that Plaintiff's request for the court to instruct Commerce to exclude the tires from the scope of the Tire Orders was not warranted.  Id.  Instead, the court remanded the matter to Commerce for a more in depth evaluation pursuant to the factors laid out in 19 C.F.R. § 351.225(k)(2).[3]  Id.

---

[1] Certain New Pneumatic Off-the-Road Tires From the People's Republic of China: Antidumping Duty Order: Notice of Amended Final Affirmative Determination of Sales at Less Than Fair Value and Antidumping Duty Order, 73 Fed. Reg. 51,624 (Dep't Commerce Sept. 4, 2008) ("AD Order").

[2] Certain New Pneumatic Off-the-Road Tires From the People's Republic of China: Countervailing Duty Order, 73 Fed. Reg. 51,627 (Dep't Commerce Sept. 4, 2008).

[3] 19 C.F.R. § 351.225(k)(1) states that: "in considering whether a particular product is included within the scope of an order or a suspended investigation, the Secretary will take into
(continued...)

   Upon remand, Commerce employed the (k)(2) factors to conclude again that Plaintiff had not demonstrated that its tires fell within the scope exclusion. <u>Final Redetermination Pursuant to Court Remand</u>, (Nov. 9, 2010), App. of Docs Supporting Def.'s Resp. to Pl.'s Comments on Final Redetermination Pursuant to Ct. Remand, Tab 8 ("<u>Remand Results</u>"). Because Commerce complied with the court's remand instructions by providing a more thorough analysis under section 351.225(k)(2) and because Plaintiff's objections are without merit, the court sustains the <u>Remand Results</u>.

## BACKGROUND

   In September 2008, Commerce imposed the Tire Orders on certain new pneumatic OTR tires from the PRC.[4] The identical scope language of the Tire Orders included:

> new pneumatic tires designed for off-the-road (OTR) and off-highway use, subject to exceptions identified below . . . . The vehicles and equipment for which certain OTR tires are designed for use include, but are not limited to: (1) Agricultural and

---

[3](...continued)
account the following: (1) The descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the Commission." When the criteria examined under section 351.225(k)(1) is not dispositive, section 351.225(k)(2) states that Commerce must then consider five factors: "(i) The physical characteristics of the product; (ii) The expectations of the ultimate purchasers; (iii) The ultimate use of the product; (iv) The channels of trade in which the product is sold; and (v) The manner in which the product is advertised and displayed."

[4] "Generally, whenever domestic producers of a particular product believe that imports of certain competing goods are being sold in the United States at less than fair market value (i.e., being 'dumped'), they may petition Commerce to impose antidumping duties on the imports of the goods." <u>King Supply Co. v. United States</u>, 674 F.3d 1343, 1345 (Fed. Cir. 2012). After investigations by Commerce and the U.S. International Trade Commission ("ITC"), Commerce may issue "an AD order imposing antidumping duties on the appropriate imported merchandise." <u>Id.</u> (citing 19 U.S.C. § 1673d(c)(2)). "After an AD order is issued, Commerce is often called upon to issue 'scope rulings' to clarify the scope of the AD order and determine whether particular products are included within its scope." <u>Id.</u> CVD orders are subject to the same scope challenge.

>   forestry vehicles and equipment, including agricultural tractors, combine
>   harvesters, agricultural high clearance sprayers, industrial tractors, log-skidders,
>   agricultural implements, highway-towed implements, agricultural logging, and
>   agricultural, industrial, skid-steers/mini-loaders; (2) construction vehicles and
>   equipment, including earthmover articulated dump products, rigid frame haul
>   trucks, front end loaders, dozers, lift trucks, straddle carriers, graders, mobile
>   cranes, compactors; and (3) industrial vehicles and equipment, including smooth
>   floor, industrial, mining, counterbalanced lift trucks, industrial and mining
>   vehicles other than smooth floor, skid-steers/mini-loaders, and smooth floor
>   off-the-road counterbalanced lift trucks.  The foregoing list of vehicles and
>   equipment generally have in common that they are used for hauling, towing,
>   lifting, and/or loading a wide variety of equipment and materials in agricultural,
>   construction and industrial settings.  Such vehicles and equipment, and the
>   descriptions contained in the footnotes are illustrative of the types of vehicles and
>   equipment that use certain OTR tires, but are not necessarily all-inclusive.  While
>   the physical characteristics of certain OTR tires will vary depending on the
>   specific applications and conditions for which the tires are designed (e.g., tread
>   pattern and depth), all of the tires within the scope have in common that they are
>   designed for off-road and off-highway use.  Except as discussed below, OTR tires
>   included in the scope of the order range in size (rim diameter) generally but not
>   exclusively from 8 inches to 54 inches.

AD Order, 73 Fed. Reg. at 51,624 25 (footnotes with definitions omitted).  The Tire Orders also excluded certain tires from the scope including, "tires of a kind designed for use on . . . vehicles for turf, lawn and garden . . . applications."  Id. at 51,625.

In February 2011, Plaintiff filed a scope ruling request, asking Commerce to find that Trac Master and Traction Master tires imported by Plaintiff fall within this exclusion.  Scope Ruling Request: OTR Wheel Engineering, Inc.   Lawn & Garden Tires, (Feb. 11, 2011) Pl.'s App., Ex. A, at 4.  Plaintiff argued that the plain scope language was dispositive in excluding Plaintiff's Trac Master and Traction Master tires.  Id.  Bridgestone Americas, Inc. and Bridgestone Americas Tire Operations, LLC  (collectively "Bridgestone") filed comments

opposing Plaintiff's exclusion request.[5]

In April 2011, Commerce issued its Final Scope Ruling, finding that the tires were not excluded from the Tire Orders. Final Scope Ruling at 8. Pursuant to 19 C.F.R. § 351.225(k)(1), Commerce stated that it found the description of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary of Commerce and the ITC to be dispositive. Id. at 6. Using data from the Tire and Rim Association ("TRA") and the ITC's injury determination, Commerce decided that tires with R-1 and R-4 type treads, like Plaintiff's, are used for farming, light industrial service, and highway mowing and therefore are not excluded from the scope of the Tire Orders. Id. at 7 8. As a result, Commerce found it unnecessary to conduct further analysis considering the additional factors contained in 19 C.F.R. § 351.225(k)(2). Id. at 5. Plaintiff did not argue that its tires fall outside the general scope of the Tire Orders, merely that they are within the exclusion for turf, lawn, and garden applications. See OTR Wheel, 853 F. Supp. 2d at 1285.

Pursuant to the court's remand in OTR Wheel, Commerce conducted a more expansive analysis under 19 C.F.R. § 351.225(k)(2). See Remand Results at 12 23. After agreeing with the court's opinion that the analysis under 19 C.F.R. § 351.225(k)(1) was not dispositive of whether the Trac Master and Traction Master tires were "designed for use" on vehicles for turf, lawn, and garden applications, Commerce undertook the five-factor (k)(2) test. Remand Results at 11. Guided by new record evidence regarding the physical characteristics of the tires and the way in which Plaintiff marketed its tires and consumers used the tires,

---

[5] Although Bridgestone participated in the proceedings before Commerce and has intervened in this action, Bridgestone has chosen not to file briefs, appear at oral argument, or otherwise actively participate in the proceedings before the court.

Commerce concluded that the tires do not fall within the scope exclusion. Id. at 18.

Plaintiff again challenges Commerce's findings, citing errors in Commerce's 19 C.F.R § 351.225(k)(2) analysis and requesting reevaluation under 19 C.F.R § 351.225(k)(1). See Comments on Final Results of Redetermination Pursuant to Court Remand ("OTR Comments") at 24. Defendant United States ("Defendant") responds that Commerce's determination was supported by substantial evidence, and the record fails to establish that Plaintiff's tires are "unambiguously designed for use on vehicles for turf, lawn, and garden appliances." Def.'s Resp. to Pl.'s Comments ("Def.'s Resp.") at 18. Defendant therefore requests that the court sustain Commerce's Remand Results. Id.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c). Commerce's final scope determination will be upheld unless it is found "to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

Plaintiff submits that the scope question may be resolved under a (k)(1) analysis in light of the recent decision in Legacy Classic Furniture, Inc. v United States, 867 F. Supp. 2d 1321 (CIT 2012).[6] OTR Comments at 21 22. Plaintiff also argues that, should the court find

---

[6] Legacy Classic involved a scope review in which the court decided that a cedar-lined storage bench with a padded seat might fall within a scope exclusion under 19 C.F.R. § 351.225(k)(1). 867 F. Supp. 2d at 1331. The order in that case covered various bedroom "chests" but created an unqualified scope exclusion for "benches." Id. at 1330. The court previously had required Commerce to undertake a (k)(2) analysis on remand, yet subsequently it decided that a (k)(1) determination placing the bench within the scope exclusion might be sufficient because the unqualified exclusion should be read broadly. Id. at 1330 31. At any rate, Legacy Classic is not binding authority in this case. See Algoma Steel Corp., Ltd. v. United
(continued...)

that a (k)(2) analysis is necessary, Commerce's redetermination is not supported by substantial evidence. Id. In Plaintiff's opinion, "it appears that the Department has additional arbitrary and capricious distinctions in store with which to unlawfully enlarge the scope of the subject Tire Orders." Id. at 4.

### I.   Reconsideration of (k)(1) Criteria

Plaintiff argues that the court should revisit the (k)(1) analysis in light of Legacy Classic. OTR Comments at 20–24. Plaintiff claims that because the Tire Orders' exclusion of tires for "turf, lawn, and garden" applications is unqualified, the exclusion applies to all tires designed for such use, even if those tires may also be designed for other uses. Id. Defendant successfully counters this assertion on exhaustion grounds. Def.'s Resp. at 6–8. Legacy Classic was issued in September 2012. Assuming arguendo Legacy Classic altered the legal landscape, Plaintiff was required to raise this claim during the remand proceedings. Congress has required that the court "shall, where appropriate, require the exhaustion of administrative remedies" in actions arising pursuant to Commerce's antidumping duty determinations. 28 U.S.C. § 2637(d). As Plaintiff concedes that this claim was not exhausted before the agency, the court will not consider it now.

Plaintiff also points to Customs' recent classification of OTR's tires under the Harmonized Tariff Schedule to support its characterization of the tires. OTR Comments at 4–5. Plaintiff asks the court to take judicial notice of the ruling, relying on Win-Tex Prods. v. United States, 829 F. Supp. 1349, 1351–52 (CIT 1993) (taking judicial notice of an unpublished scope

---

⁶(...continued)
States, 865 F.2d 240, 243 (Fed. Cir. 1989).

order interpreting the same scope language as the one challenged in that case). OTR Comments at 6. The court declines to do so. The authority to clarify the scope of AD and CVD orders rests solely with Commerce, and Customs' rulings are not within the list of factors to be considered under 19 C.F.R. § 351.225(k). See <u>Crawfish Processors Alliance v. United States</u>, 483 F.3d 1358, 1361 (Fed. Cir. 2007). Additionally, <u>Win-Tex</u> involved judicial notice of a conflicting decision on essentially the same subject by the same agency. 829 F. Supp. at 1351 52. Classification decisions by Customs and scope rulings by Commerce may be in conflict without calling into question the reasonableness of either, even assuming both agencies apply the same legal standard.

### II.     Application of the (k)(2) Factors

In reviewing Commerce's analysis under 19 C.F.R. § 351.225(k)(2) the court will not "substitute [its] judgment for that of Commerce . . . nor [will] it allow the parties to retry factual issues . . . de novo." See <u>Inland Steel Indus., Inc. v. United States</u>, 188 F.3d 1349, 1359 (Fed. Cir. 1999) (applying the substantial evidence standard of review to factual determinations by Commerce in a trade remedy case). Under this standard, the court will not re-weigh the evidence presented to Commerce, and will uphold Commerce's determination provided it chooses from among the range of possible reasonable conclusions based on the record. Commerce conducted a thorough reconsideration of the scope of the Tire Orders pursuant to the five (k)(2) factors and weighed evidence that was in conflict or inconclusive. Nonetheless, Plaintiff asserts that Commerce erred and its decision must be overturned.

### A.     <u>Physical Characteristics of the Product</u>

The first of the (k)(2) factors instructs Commerce to review the physical

characteristics of the product. 19 C.F.R. § 351.225(k)(2)(i). Commerce relied in particular on the R-1 and R-4 tread design of Plaintiff's tires, which cause turf disturbance because they are designed to dig into uneven or moist ground. Remand Results at 12 14. On the other hand, Commerce was not persuaded by the relatively small size of the tires[7] and the markings on them, the factors emphasized by Plaintiff. Id. at 13, 15. Plaintiff directed Commerce to a depiction of what it claims to be a "sub-compact tractor" designed for lawn and gardening applications. OTR Comments at 8 10. It also noted that this marking does not appear on its larger agricultural tires, supporting its interpretation of the image as reflecting lawn and garden usage. Id. at 9. Commerce found this evidence inconclusive, stating that the marking could "just as easily be a go-kart or a small tractor." Remand Results at 15. Before the court, Plaintiff again points to the product marking that Plaintiff claims depicts a "riding lawn mower." OTR Comments at 9 10.

   Although the court is not persuaded by Commerce's far-fetched conclusion that the picture on the tires could be a go-cart, one not reiterated in Defendant's brief, the court agrees with Commerce's conclusion that the image is inconclusive. Commerce, therefore, was permitted to disregard the evidence as unhelpful, as it did. Similarly, although size is certainly one consideration in classifying the tires at issue in this case, Commerce's explanation that size is not determinative is reasonable given the acknowledged range of tire sizes covered by the scope of the Tire Orders and the decision to base scope, not on the size of the tire, but on its intended use at the time of design. See AD Order, 73 Fed. Reg. at 51,624 ("OTR tires included in the scope of the order range in size (rim diameter) generally but not exclusively from 8 inches to 54

---

[7] Plaintiff's tires range in size from 10 12 inches. While this size is within the size range of the Tire Orders, the tires subject to the Tire Orders may be as large as 54 inches in agricultural and industrial applications. Remand Results at 13 n.42.

Court No. 11-00166                                                                                                Page 10

inches") (emphasis added).  Commerce's decision to rely more heavily on tread type, as opposed to size or the inconclusive tire markings, was not unreasonable.

    B.    <u>Expectations of the Ultimate Purchaser</u>

In terms of the expectations of the ultimate purchaser, Commerce addressed and discounted Plaintiff's marketing materials and its communications with its main customers during the design process.[8]  <u>Remand Results</u> at 15 17.  Plaintiff asserts that Commerce did not focus enough on the marketing materials or correspondence and improperly discredited them, despite the clear evidence found in them that the tires were designed to meet Plaintiff's customers' needs for durable tires capable of handling uneven terrain.  OTR Comments at 11 12.

Commerce concluded that the correspondence between Plaintiff and its customers did not reference necessarily the subject tires.  This determination is dubious.  Commerce also determined that Kubota's BX Series tractors, on which Plaintiff asserts its tires are standard features, are not the type of vehicles used solely for lawn, turf, and, garden applications.  The court cannot say, however, that this further conclusion is unsupported.  <u>See</u> <u>Remand Results</u> at 15.  Commerce noted in particular that the Kubota BX series tractors are designed for "digging, earth-moving or loading, and log carrying" according to the marketing materials submitted by Plaintiff.  <u>Id.</u> at 15.  This fact rendered questions about the scope of the communications between Plaintiff and its customer less important.  Accordingly, it was not unreasonable for Commerce to conclude that the type of vehicle, for which Plaintiff claims it designed the tires, falls outside the

---

[8] Commerce addressed communications between Plaintiff's customer, Kubota, and Plaintiff within the context of the physical characteristics factor.  <u>Remand Results</u> at 15.  This evidence appears to relate more directly to the factor of the expectations of the ultimate purchaser.  Thus, the court will address it here.

Court No. 11-00166                                                                                              Page 11

realm of the more traditional gardening applications seemingly the subject of the scope exclusion.

    C.    <u>Ultimate Use of the Product</u>

With respect to the ultimate use of the product, Commerce relied in part on the lack of clear evidence to support Plaintiff's claims that its tires are used as standard features on two sub-compact tractors. <u>Remand Results</u> at 17 18. Moreover, Commerce also found, as noted <u>supra</u>, that the tractors may be used for activities not traditionally associated with "gardening," including "agricultural and construction activities, such as heavy excavation." <u>Id.</u> at 18.

Although Plaintiff is correct that this scope exclusion is based on design rather than actual use, the ultimate use factor addressed by Commerce is relevant circumstantial evidence of the likely intent of Plaintiff at the time it designed the products. Because the parties agree that the tires are in fact used for a variety of purposes that go beyond turf, lawn, and garden applications, Commerce could conclude that Plaintiff's assertion that the tires were designed primarily for lawn, turf, and garden applications is undermined. <u>See</u> <u>Remand Results</u> at 18.

    D.    <u>The Channels of Trade in Which the Product is Sold</u>

Plaintiff essentially agrees with Commerce's remand determination that the channels of trade in this case "shed[] no light on the fundamental issue of whether OTR's Trac Master and Traction Master tires were 'designed for use' on vehicles with turf, land and garden applications." OTR Comments at 18; <u>see also</u> <u>Remand Results</u> at 19. Therefore, neither party believes that this factor is entitled to much weight in deciding the scope question.

    E.    <u>Manner in Which the Product is Advertised and Displayed</u>

Commerce acknowledged that the marketing materials submitted by OTR

Court No. 11-00166 Page 12

describe the subject tires as "OTR's premium Lawn and Garden Tire." Remand Results at 19. Nonetheless, Commerce gave substantial weight to Plaintiff's website that classified the subject tires within the "farm" and "utility"[9] section but not the "turf and garden" section. Id. at 19 20. Thus, according to Commerce, "the record does not demonstrate that the manner in which [the tires] are advertised or displayed indicates they were designed for turf, lawn and garden applications." Id. at 21. Plaintiff contends that its evidence of marketing materials and previous website classification of the tires as lawn and garden tires compels a finding that the tires were designed for lawn and garden applications. OTR Comments at 18 20. Plaintiff argues that Commerce relied to an unreasonable degree on its own independent research of Plaintiff's website, revealing the Plaintiff's "misclassification" of the subject tires. Id. Plaintiff also renews its arguments that this factor is irrelevant in considering the "designed for use" standard. Id. at 19.

The court finds that Commerce has discretion to allocate relative weight to each piece of evidence, and the court will not entertain the invitation to re-weigh the evidence itself. As explained, supra, marketing materials are relevant circumstantial evidence of the design standard set out in the scope exclusion clause. Although Commerce was presented with marketing materials that indicated the tires were advertised for lawn and garden use, the court cannot say that Commerce erred in determining that evidence largely was negated by Plaintiff's classification of the tires on its own website as only utility and farm tires, both falling outside

---

[9] Vehicles using utility tires are described on Plaintiff's website as: "Skid Steer/Backhoe/Utility Vehicles tend to operate best in all conditions and service a range of applications. This includes construction, landscaping, farming, mining, and ground support equipment." Remand Results at 20.

Commerce's reasonable interpretation of lawn, turf, and garden applications.

## CONCLUSION

Commerce undertook the "further evaluation," pursuant to the factors set forth in 19 C.F.R. § 351.225(k)(2), as directed by OTR Wheel. The best that can be said for Plaintiff's case is that there is contradictory evidence. In such a case, Commerce may reach one supported conclusion or the other. Commerce has met its burden of making a full and complete inquiry and has undertaken a reasonable analysis. Commerce's determination that Plaintiff's tires do not fall within the scope exception is one that is supported by substantial evidence, and therefore, Commerce's Remand Results are SUSTAINED. Judgment will be entered accordingly.

                                                    /s/ Jane A. Restani
                                                      Jane A. Restani
                                                              Judge

Dated: March 22, 2013
        New York, New York

Slip Op. 13-39

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| OTR WHEEL ENGINEERING, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> BRIDGESTONE AMERICAS, INC. and BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, <br><br> Intervenor Defendants. | Before: Jane A. Restani, Judge <br><br> Court No. 11-00166 |

## JUDGMENT

Dated: March 22, 2013

Upon consideration of the remand results filed by the United States Department of Commerce, Plaintiff's comments, defendant's response, and all other pertinent papers, and in the absence of any substantive challenges to the remand results, it is hereby

ORDERED, ADJUDGED and DECREED that the determination on remand of the United States Department of Commerce in this action is SUSTAINED.

          /s/ Jane A. Restani
             Jane A. Restani
                  Judge

Dated: March 22, 2013
    New York, New York